**MITSUI & CO., LTD., Petitioner,**

v.

**OCEANTRAWL CORPORATION, Northern Eagle Partners, L.P., Northern Eagle, Inc., Oceancatch Corporation, Northern Jaeger Partners, L.P., Northern Jaeger, Inc., Oceanpack Corporation, Northern Hawk Partners, L.P., and Northern Hawk, Inc., Respondents.**

**No. 95 Civ. 8008 (MGC).**

United States District Court,
S.D. New York.

Nov. 29, 1995.

---

Winthrop, Stimson, Putnam & Roberts by Sutton Keany, Steven R. Schindler, New York City, for Petitioner.

Reid & Priest by Gerald Aksen, New York City, for Respondents.

Bogle & Gates P.L.L.C. by Richard M. Clinton, Seattle, Washington, for Respondents.

CEDARBAUM, District Judge.

This is an action to confirm an arbitration award. In the underlying arbitration, Mitsui & Co., Ltd. asserted claims of breach of contract against respondents under three contracts. The arbitrators awarded Mitsui damages under one contract in the amount of 941,623,319 Japanese yen plus statutory interest calculated in yen and under a second contract in the amount of 1,175,963,134 yen plus statutory interest calculated in yen. After Mitsui commenced this action, the parties agreed to a stipulation and order (the "Stipulation and Order") confirming the arbitration award and directing the Judgment Clerk of this Court to enter judgment on the arbitration award in yen. I "so ordered" the Stipulation and Order on October 27, 1995.

Almost forty-five years ago, in *Shaw, Savill, Albion & Co. v. The Fredericksburg,* the Court of Appeals for the Second Circuit stated that "[i]t is well settled that a money judgment by an American court must be in American currency." 189 F.2d 952, 954 (2d Cir.1951); *see also Baumlin & Ernst, Ltd. v. Gemini, Ltd.,* 637 F.2d 238, 244 n. 9, 245 (4th Cir.1980) (noting that "customary" judgments must be entered in U.S. currency and not reaching the question of whether "consent" judgments also must be entered in U.S. currency). The Second Circuit has never expressly overruled that position. However, nine years ago, the court noted that the "assumption" that American courts cannot enter judgments in foreign currency rested "at least in part" on a section of the Coinage Act of 1792 that was repealed in 1982, and stated that in light of the repeal of that section, the rule "probably deserves reexamination." *Competex, S.A. v. LaBow,* 783 F.2d 333, 337 (2d Cir.1986). The court also observed that courts in England, France, and Germany are authorized to enter judgments in foreign currencies. *See id.*

Three years ago, the Seventh Circuit examined the question and concluded that American courts can and should enter judgments in foreign currencies in appropriate cases. *In re Oil Spill by the Amoco Cadiz,* 954 F.2d 1279 (7th Cir.1992) (per curiam) (affirming judgment entered in French francs). Echoing the observations of the Second Circuit, the Seventh Circuit pointed out that the earlier reluctance of courts to enter such awards had been based on those courts' interpretation of the now-repealed provision of the Coinage Act of 1792, *see id.* at 1328, and that "[c]ourts all over the world enter judgment in currencies other than their own," *id.* at 1327. The court found no bar to judgment in foreign currency and no practical problems with enforcing or collecting judgments in foreign currencies. *Id.* at 1327–28. The court concluded that courts should enter judgment in the currency in which the parties conducted their transactions. *Id.* at 1329.

The rule adopted by the Seventh Circuit allows the parties to hedge against risks

in currency fluctuation, *id.,* and "honor[s] the parties' choice of currencies in which to transact business and bear risks," *id.* at 1330. That rule also avoids disputes over the selection of a conversion date. *See id.* at 1328. Entry of judgment in the currency of the parties' transactions accords with principles of fairness and with the goal of making injured parties whole because it provides them with payment in the currency for which they bargained. *See* Opinion of Professor Hans Smit, Fuld Professor of Law and Director of the Parker School of Foreign and Comparative Law, Columbia University, November 17, 1995, at 8–9.

It should also be noted that in 1987, New York adopted a statute that provides: "In any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation." N.Y.Jud.Law § 27(b) (McKinney Supp.1995). The Restatement (Third) of the Foreign Relations Law of the United States states that American courts "are not precluded from" entering judgment in the foreign currency of an underlying obligation. Restatement (Third) of the Foreign Relations Law of the United States § 823(1) (1986). The comment to this section counsels that "a judgment in a foreign currency should be issued only when requested by the judgment creditor, and only when it would best accomplish the objective [of making the injured party whole and avoiding rewarding a debtor who has delayed in carrying out the obligation]." *Id.* cmt. b.

■ The parties to this action conducted all of their transactions in yen. (Nicolov Aff. ¶¶ 4–9.) They have agreed that judgment should be entered in yen. The arbitration award is in yen. *Cf. Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (noting federal policy favoring arbitration). I am persuaded that were the Second Circuit faced with the question today, it would hold that American courts may enter judgments in foreign currency. After carefully considering the matter, I conclude that entry of judgment in yen is proper in this action, and

accordingly direct the Judgment Clerk to enter judgment in yen pursuant to the Stipulation and Order.

SO ORDERED.